UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HASANI ANTHONY,

          Plaintiff,

    v.

MTA LONG ISLAND RAILROAD
COMPANY,

          Defendant.

**MEMORANDUM & ORDER**
25-CV-6119 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Hasani Anthony commenced the instant action on November 3, 2025, alleging her employer, Defendant MTA Long Island Railroad Company ("LIRR"), unlawfully discriminated against her on the basis of disability, refused to accommodate her disabilities, created a hostile work environment, and retaliated against her for engaging in protected activity, in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). ECF No. 1 ("Complaint").[1] Defendant moves to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6). ECF No. 16.

For the reasons set forth below, Defendant's motion is GRANTED IN PART.

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND

I.      **Relevant Facts**[2]

Plaintiff alleges that she is afflicted by multiple disabilities, including anxiety, post-traumatic stress disorder, depression, scleroderma, medical epicondylitis, carpel tunnel syndrome, arthritis, tendonitis, internal derangement, and related strain.  ECF No. 1 ¶ 7.

As a consequence of her disabilities, if Plaintiff "puts too much strain on her arms and legs, she experiences cramps and tingling, to the point that her arms and legs stiffen up." *Id.* ¶ 8. Plaintiff also may experience pain, muscle spasms, and other symptoms which make it difficult for her to perform daily tasks, and if she "does not have access to ergonomic equipment, she regularly suffers from stiffness and pain throughout the day." *Id.* ¶ 9.  Plaintiff alleges that her disabilities "qualify as disabilities under the [ADA] as they impact [her] ability to perform major life activities including walking and standing." *Id.*

Plaintiff began working for Defendant at its Stations Department in Queens, in July 2018. *See id.* ¶ 10.   Because of her disabilities, Plaintiff made multiple requests to her supervisors for reasonable accommodations, *viz.* "(1) the use of an ergonomic workstation; (2) an adjustable standing desk with monitors; (3) an ergonomic keyboard and mouse; (4) an ergonomic chair; (5) an ergonomic footrest; (6) an ergonomic floor mat; (7) an ergonomic wrist rest, and; (8) an ergonomic wrist pad." *See* ECF No. 1 ¶ 14.  She also requested "to temporarily work remotely . . . until she could receive her accommodations in the workplace." *Id.* ¶ 17.

Defendant granted Plaintiff's requests for ergonomic equipment on or about June 10, 2021, but denied her request to work from home until it could provide the equipment.  *See id.*

---

[2]      The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

¶ 18.  After some initial delays—including a June 15, 2021 assessment by Paul Manske, Defendant's Deputy Chief Safety Officer, in which Manske acknowledged a shared workstation desk "was not fit for [Plaintiff]'s disabilities"—Defendant provided Plaintiff with a private workstation and "with ergonomic equipment that would be for her exclusive use, including:  an ergonomic chair, ergonomic mouse and keyboard, a sit/stand mechanism placed on top of her desk, a wrist pad, a footrest, and an ergonomic mat," in or around September 2021.  *See id.* ¶¶ 19–20.

### A.      The Challenges With Plaintiff's Ergonomic Equipment

Whatever relief Plaintiff received from these accommodations, it was relatively short-lived.  Plaintiff alleges that, sometime after Defendant provided her with the ergonomic equipment, her desk chair, although labeled with her name, was taken by coworkers, forcing her to search for her chair "on at least two occasions."  *Id.* ¶¶ 21–22.  Plaintiff also alleges that other pieces of her equipment "went missing."  ECF No. 1 ¶ 23.  When Plaintiff complained about the occasional relocation of her equipment to her supervisor, he allegedly did "nothing to help [her] locate her missing chair," nor did he act "to ensure that her coworkers understood her equipment, which was provided to her for medical reasons, was not to be used or tampered with."  *Id.* ¶ 22.

On or about April 10, 2023, Plaintiff's supervisor informed her that Defendant needed Plaintiff's private workstation "despite the fact that this workstation contained all of the ergonomic equipment needed to accommodate [Plaintiff]'s disability."  *Id.* ¶ 24.  Plaintiff alleges that "Defendant failed to provide [her] with an alternative reasonable accommodation and instead returned her (along with her ergonomic equipment) to her original shared workstation."  *See id.*  At the shared workstation, Plaintiff alleges "her chair and her other ergonomic equipment went missing and/or were tampered with on a regular basis, forcing her to personally attempt to locate these items."  ECF No. 1 ¶ 26.

3

Again, Plaintiff complained to her supervisors to no avail, and on June 16, 2023, she filed a complaint directly with the New York State Division of Human Rights ("NYSDHR") "regarding disability discrimination." *Id.* ¶¶ 28–30.  Still, "her ergonomic equipment continued to go missing or [was] misplaced with regularity," and, again, Plaintiff complained to her supervisors to no avail.  *Id.* ¶¶ 31–37.  Eventually, in January 2024, in light of the frequency with which Plaintiff's ergonomic equipment was removed, relocated, or otherwise tampered with, one of Plaintiff's supervisors allowed her to work at a different office.  ECF No. 1 ¶ 37.  After approximately one week, a different supervisor informed Plaintiff that she was not permitted to work at that location, and, on January 8, 2024, that supervisor "told Anthony that she was not allowed to use the office with the ergonomic equipment, and in so doing, denied her the reasonable accommodation that had been previously granted."  *Id.*

Later that month, Plaintiff bid for transfer from Defendant's Stations Department in Queens to its Ticket Office Department at Atlantic Terminal in Brooklyn.  *See id.* ¶ 38.  When the transfer bid was accepted, Plaintiff "made personal arrangements to have her ergonomic equipment moved and set up at Atlantic [T]erminal."  *Id.*  During this time, however, Plaintiff alleges that she "experienced significant difficulties with her accommodations" at the Stations Department.  *Id.* ¶ 39.  Specifically, Plaintiff learned that one of her colleagues "singled [Plaintiff] out due to her disability by regularly and openly discussing [her] disabilities as well as her ergonomic equipment" with others at the Stations Department and Atlantic Terminal, and sent Plaintiff's supervisors "a discriminatory email."  *Id.* ¶¶ 39–42.  Between January and June 2024, Plaintiff claims that her ergonomic equipment "continuously went missing."  ECF No. 1 ¶¶ 43–45.  Plaintiff alleges that she complained about the consistent, conspicuous absence of her equipment, and her colleague's suspected role in relocating her equipment to multiple

supervisors, including Defendant's Deputy Chief Equal Opportunity Officer, during that time, but these complaints too, were to no avail.  *Id.* ¶¶ 42–45.

### B.      The July 9, 2024, Altercation and its Aftermath

Plaintiff alleges that, on July 9, 2024, the above-mentioned colleague "approached [Plaintiff] out of nowhere and without saying anything, assaulted [her]," by "push[ing] [Plaintiff] approximately twenty to thirty paces from the building."  *Id.* ¶ 46.  Plaintiff reported this altercation to Metropolitan Transit Authority police and the New York City Police Department, and Defendant conducted an internal investigation.  *Id.*  Defendant "placed Anthony on relief of duty with pay," during the investigation.  *Id.*  About a month later, Defendant suspended Plaintiff without pay "due to false allegations that she pushed [her colleague]."  ECF No. 1 ¶ 47.  Plaintiff alleges that her suspension was "in retaliation for her protected activity, and/or in further disability discrimination."  *Id.*

On November 17, 2024, Plaintiff filed her second discrimination complaint with the NYSDHR, "complaining of discrimination and retaliation."  *Id.* ¶ 48.  The next day, she filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), "alleging disability discrimination and retaliation," based on the same discrimination and retaliation highlighted in her second NYSDHR complaint.  *See id.*

Plaintiff further alleges that, in February 2025, in connection with Defendant's investigation of the July 9, 2024, altercation, it "falsely alleged that [she] [was] guilty of violating [its] workplace violence policy, and demoted her," which "resulted in a decrease of pay of almost $20 an hour."  *Id.* ¶ 49.  About a year after the altercation, in July 2025, Defendant reversed Plaintiff's demotion.  *Id.* ¶¶ 50–51.  A few weeks later, on August 7, 2025, Plaintiff returned to work.  *See id.*  Plaintiff alleges that, since her return to work, and despite more complaints to her supervisors, Defendant has not provided her with ergonomic equipment, and,

5

therefore, "subjected [her] to disability discrimination as well as retaliation for her protected activity." *Id.* ¶¶ 50–52.

## II.    Procedural Background

As mentioned above, in June 2023 and November 2024, Plaintiff filed complaints with the NYSDHR, alleging disability discrimination (in her first NYSDHR complaint) and discrimination and retaliation (in her second NYSDHR complaint). *See id.* ¶¶ 29–30, 48. On November 18, 2024, Plaintiff filed "[a] charge of discrimination" with the EEOC. *See id.* ¶¶ 4, 48. On August 5, 2025, the EEOC issued "[a] right to sue letter." ECF No. 1 ¶ 4 "[W]ithin ninety (90) days of the issuance of said letter," in November 2025, Plaintiff commenced this action by filing her Complaint. *See id.*

Approximately three months after Plaintiff filed her Complaint, Defendant filed a pre-motion letter in anticipation of a proposed motion to dismiss, *see* ECF No. 11, and a motion to stay discovery, *see* ECF No. 12. Plaintiff filed a responsive letter the next day. *See* ECF No. 15. In light of the parties' representations in their letters, the Court stayed discovery "pending the Court's disposition of the forthcoming motion to dismiss," and set a briefing schedule for that motion. *See* Jan. 28, 2026, Text Order. The Court also noted that despite its "prior order expressly ask[ing] Plaintiff to explain whether Plaintiff believes the complaint can be amended to address the issues raised in Defendant's pre-motion letter, Plaintiff's response to [the pre-motion] letter states that Plaintiff does not intend to amend the complaint." *Id.* Nonetheless, the Court permitted Plaintiff to "either: (a) file a letter no longer than three pages on or before January 30, 2026, requesting leave to amend and describing generally Plaintiff's anticipated amendments, or (b) include as an exhibit to Plaintiff's brief in opposition to Defendant's motion to dismiss a proposed amended complaint." *Id.*

6

In accordance with the briefing schedule, Defendant filed its motion to dismiss on February 27, 2026.  *See* ECF Nos. 16, 17 (Motion to Dismiss and Supporting Memorandum).  A month later, Plaintiff filed her opposition to the Motion to Dismiss.  *See* ECF No. 19 ("Opposition").  Plaintiff did not request leave to amend or submit a proposed amended complaint with her Opposition.[3]  Defendant filed its reply in support of its Motion to Dismiss shortly thereafter.  *See* ECF No. 20 ("Reply").

## LEGAL STANDARD

### I.    Rule 12(b)(1)

When a party moves to dismiss under Rule 12(b)(1) and on other grounds, courts "consider the Rule 12(b)(1) challenge first" because if a court finds that it lacks subject matter jurisdiction, then the defendant's other "defenses and objections become moot and do not need to be determined."  *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019).  Generally, "[a] district court properly dismisses an action under [Rule] 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it."  *Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015).

When evaluating a Rule 12(b)(1) motion, a "district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  However, "[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting

---

[3]    Even though Plaintiff never requested leave to amend her complaint or submitted a proposed amended complaint, there are several points in her Opposition where she refers to an "Amended Complaint."  *See, e.g.*, ECF No. 19 at 6, 9.  Given Plaintiff's unequivocal position that she does not intend to amend her Complaint "to include new facts," ECF No. 15 at 3, the Court understands any references to an "Amended Complaint" to be editing errors.

it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).  Rather, "[t]he party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists." *Branch of Citibank, N.A. v. De Nevares*, 74 F.4th 8, 15 (2d Cir. 2023).  To resolve a jurisdictional issue, the court may refer to "affidavits and other materials beyond the pleadings." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

## II.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions," and a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678.  Accordingly, the Court must disregard any "conclusory allegations, such as formulaic recitation[s] of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

Plaintiff brings claims for:  (1) discrimination on the basis of disability or perceived disability; (2) failure to accommodate those disabilities; (3) hostile work environment; and (4) retaliation under the ADA, NYSHRL, and NYCHRL, for a total of twelve claims.  *See* ECF No. 1 ¶¶ 54–56.  Defendant challenges Plaintiff's discrimination, failure to accommodate, and retaliation claims under the NYSHRL and NYCHRL, on Rule 12(b)(1) grounds.  *See* ECF

No. 17 at 13–16.  It challenges Plaintiff's other claims pursuant to Rule 12(b)(6).  *See id.* at 16–31.

For the reasons set forth below, Plaintiff's NYSHRL and NYCHRL claims of discrimination, failure to accommodate, and retaliation are barred by the election of remedies doctrine.  *See infra* Part I.  Plaintiff's ADA discrimination claims are dismissed for failure to state a claim.  *See infra* Part II.A.  With respect to her ADA failure to accommodate claims, some are dismissed because they are untimely, some are dismissed for failure to adequately allege that Defendant refused accommodations, and some survive.  *See infra* Part II.B.  Plaintiff's claims under the ADA, NYSHRL, and NYCHRL for hostile work environment survive.  *See infra* Part II.C.  Finally, her ADA retaliation claims are dismissed for failure to adequately allege a causal connection.  *See infra* Part II.D.

The Court addresses Defendant's Rule 12(b)(1) arguments before addressing its arguments under Rule 12(b)(6) because it must "consider the Rule 12(b)(1) challenge first."  *See Daly*, 939 F.3d at 426.

## I.      Most of Plaintiff's State and Local Claims are Barred by the Election of Remedies Doctrine

Defendant argues Plaintiff's discrimination, failure to accommodate, and retaliation claims under the NYSHRL and NYCHRL "are barred by the election of remedies doctrine as they were fully adjudicated by the New York State Division of Human Rights."  ECF No. 17 at 8, 14–16.  It has a point.  The NYSHRL's election of remedies provision, "with certain exceptions . . . precludes resort to courts after claims have been filed with a local commission on human rights."  *See Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013); N.Y. Exec. Law § 297(9).  The NYCHRL features a similar provision, which provides for "a cause of action in any court of competent jurisdiction . . . unless [the claimant] has filed a complaint with

9

the city commission on human rights or with the [NYSDHR] with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment or violence." N.Y.C. Admin Code § 8-502(a). "Thus, by the terms of the statute and code, respectively, the [NYSHRL] and [NYCHRL] claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002); *Curry-Malcolm v. Rochester City Sch. Dist.*, No. 21-2683, 2023 WL 3698213, at *3 (2d Cir. May 30, 2023) ("Under the election of remedies doctrine, a plaintiff may not bring NYSHRL claims in federal court if those claims have already been adjudicated before the NYSDHR.").

There are two exceptions to this bar: (1) where the NYSDHR complaint "is not dismissed on the merits, but rather for administrative convenience, untimeliness, or on the basis that the election of remedies is annulled," and (2) "when a plaintiff does not directly file a complaint with the NYSDHR, but rather with the EEOC, which thereafter files it with the NYSDHR in accordance with Title VII requirements." *See Quirino v. New Jewish Home*, No. 19-cv-05778, 2021 WL 11430535, at *9 (S.D.N.Y. Feb. 19, 2021), *report and recommendation adopted*, 2021 WL 1089602 (S.D.N.Y. Mar. 22, 2021).

As previously mentioned, Plaintiff filed two complaints with the NYSDHR. *See* ECF No. 1 ¶¶ 30, 48. The first, filed in June 2023, alleged disability discrimination and failure to accommodate. *See id.* ¶ 30; ECF No. 18-2 at 5 (Plaintiff's June 16, 2023, NYSDHR complaint). That complaint was dismissed because the NYSDHR determined "there [was] NO PROBABLE CAUSE to believe that the respondents have engaged in or [were] engaging in the unlawful discriminatory practice complained of," and "[t]he investigation [] revealed insufficient evidence to believe that the [NYSHRL] has been violated." ECF No. 18-4 at 1–2 (NYSDHR

10

Determination and Order After Investigation).  Moreover, "[a]lthough the NYSDHR's determination did not explicitly mention the NYCHRL," *see id.*, it is well-settled that "a claimant's [NYSDHR] complaint addressing the same incident, and [resulting] in a finding of no probable cause, procedurally bars the claimant from relief under the NYCHRL."  *See Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 189 (S.D.N.Y. 2011); *see also Rasmy v. Marriott Int'l, Inc.*, No. 16-cv-4865, 2017 WL 773604, at *5 (S.D.N.Y. Feb. 24, 2017) (emphasizing that the NYSHRL and the NYCHRL election of remedies bars relate to "unlawful discriminatory practices, not claims").  And, because neither of the enumerated exceptions to the bar apply, *see Quirino*, 2021 WL 11430535, at *9, these claims are barred by the election of remedies doctrine.

In her Opposition, Plaintiff argues that the election of remedies provisions do not bar her claims because the relevant facts "are reasonably related to Plaintiff's State Division filing, yet do not arise out of substantially the same facts," and "many of the fact[s], as pled, subsequent to her [first NYSDHR complaint] cannot be said to have arisen out of the same set of facts."  ECF No. 19 at 9–10.  These arguments are unavailing.  Plaintiff's contention that the claims are not barred because they are not the same facts, ignores the fact that "[t]he election of remedies doctrine 'is not limited to the precise claims brought in the administrative proceeding, but extends to *all claims* arising out of those same events.'"  *Bledsoe v. New York City Transit Auth.*, No. 23-cv-0775, 2024 WL 989845, at *7 n.5 (E.D.N.Y. Mar. 7, 2024) (emphasis in original) (quoting *Rochester v. Fortune Soc'y*, No. 16-cv-9423, 2018 WL 4574886, at *4 (S.D.N.Y. Sept. 4, 2018)).  With respect to her argument concerning the "many" facts that occurred "subsequent to her [first NYSDHR complaint]," Plaintiff's argument is not only conclusory, but also puzzling, in that it omits any reference to her second NYSDHR complaint (filed in November 2024), which concerns most of the alleged discriminatory and retaliatory actions of which the

11

instant action is concerned. *See* ECF No. 1 ¶¶ 31–48; ECF No. 18-3 (Plaintiff's November 17, 2024, NYSDHR complaint). In any event, this argument lacks merit because "[s]o long as substantially the same facts are involved, . . . the doctrine of election of remedies will bar any subsequent court proceedings, . . . and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine." *See DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 392 (E.D.N.Y. Mar. 31, 2014); *Vasquez v. City of New York - Off. of Mayor*, No. 22-cv-5068, 2024 WL 1348702, at *14 (E.D.N.Y. Mar. 30, 2024) (finding election of remedies doctrine barred claims "even if some of the alleged discriminatory conduct took place after [p]laintiff filed his [administrative] complaints" because "such conduct was 'nothing more than the culmination of [his] employer's allegedly unlawful practice'"). And, because neither exception to the election of remedies bar applies to Plaintiff's second NYSDHR complaint, *see Quirino*, 2021 WL 11430535, at *9, these claims, too, are barred.[4]

---

[4]    The Court notes that at or around the time Plaintiff filed her second NYSDHR complaint, she also filed a complaint with the EEOC. *See* ECF No. 1 ¶ 48 (asserting that "[o]n or about November 18, 2024, Anthony filed a complaint with the [EEOC] alleging disability discrimination and retaliation, based on the [same claims as her November 2024 NYSDHR complaint]"). The Court also notes that, based on the available record, Plaintiff has not received a right-to-sue letter for the November 2024 complaint, which suggests that Plaintiff has not exhausted her claims arising from conduct she experienced after she filed her June 2023 NYSDHR complaint, which "ordinarily" would preclude her ADA discrimination and retaliation claims in this case. *See Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) ("Ordinarily, a plaintiff seeking to bring a claim pursuant to the Americans with Disabilities Act ("ADA") . . . must exhaust administrative remedies through the EEOC.").

   However, because the discriminatory and retaliatory conduct undergirding the November EEOC complaint is "reasonably related" to the claims in her June 2023 NYSDHR complaint, *see Soules*, 882 F.3d at 57, and in light of the fact that she filed a complaint with the EEOC, *see* ECF No. 1 ¶ 48, and received a right-to-sue letter in connection with her June 2023 NYSDHR complaint, *see* ECF No. 18-5, the Court waives the administrative exhaustion requirement with respect to Plaintiff's ADA discrimination and retaliation claims, *see Grey v. Promenade Rehab. & Care Ctr.*, 145 F. App'x 705, 707 (2d Cir. 2005) (acknowledging that "administrative exhaustion requirements may be waived to serve equity," especially when a plaintiff "ma[kes]

Taken together, Plaintiff's claims for discrimination, failure to accommodate, and retaliation under the NYSHRL and NYCHRL arise from the same incidents and operative events as those presented in her two NYSDHR complaints, and because no exception to the election of remedies bar applies, the Court dismisses these claims. *See Forkin v. United Parcel Serv.*, No. 18-cv-3397, 2020 WL 9816001, at *7 (E.D.N.Y. Nov. 10, 2020). Additionally, because both the NYSHRL and NYCHRL election of remedies bars are jurisdictional, *see Adams v. Legendary Mktg.*, No. 23-cv-6167, 2023 WL 6444843, at *3 (S.D.N.Y. Oct. 3, 2023); *Higgins*, 836 F. Supp. 2d at 190; *Forkin*, 2020 WL 9816001, at *7, the Court dismisses Plaintiff's claims arising under them without prejudice, *see Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999).

## II.    Plaintiff's Remaining Federal, State, and Local Claims

In addition to its arguments pursuant to Rule 12(b)(1), Defendant argues that Plaintiff's disability discrimination, failure to accommodate, hostile work environment, and retaliation claims should be dismissed, pursuant to Rule 12(b)(6). *See* ECF No. 17 at 16–25. The Court addresses each of these grounds, in turn.[5]

### A.    Disability Discrimination Claims

Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

---

the sort of diligent, even if unsuccessful, effort to obtain a right-to-sue letter from the EEOC"). The Court addresses the merits of Plaintiff's ADA claims in Part II, *infra*.

[5]    For the avoidance of doubt, the Court does not repeat its analysis of Plaintiff's claims of disability discrimination, failure to accommodate, and retaliation under the NYSHRL and NYCHRL, as those claims are barred by the election of remedies doctrine. *See supra* Part I. The Court's analysis of Defendant's Rule 12(b)(6) motion focuses on Plaintiff's claims under the ADA, except for Plaintiff's hostile work environment claims, which the Court considers under the ADA, NYSHRL, and NYCHRL because Plaintiff's NYSDHR complaints did not present such claims.

13

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Disability discrimination claims under the ADA are subject to the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> Under that framework, the question on a motion to dismiss is whether the plaintiff has adequately pleaded a prima facie case of discrimination. To state a prima facie case of discrimination under the ADA, a plaintiff must allege that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability."

*Slater v. NYU Langone Health Sys.*, No. 24-cv-3711, 2025 WL 2208292, at *4 (E.D.N.Y. Aug. 4, 2025) (citing *McDonnell Douglas*, 411 U.S. at 802, then quoting *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015)). Notably, Plaintiff "is not required to plead a prima facie case under *McDonnell Douglas* to defeat a motion to dismiss." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Still, Plaintiff must "demonstrate that she suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent." *Id.* (quoting *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015)). At the pleading stage, Plaintiff may satisfy this "inference of discriminatory intent" requirement by merely "giv[ing] plausible support to a minimal inference of discriminatory motivation." *Id.* (quoting *Vega*, 801 F.3d at 84). Additionally, "the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

Defendant asserts that Plaintiff's discrimination claims should be dismissed "because she fails to allege facts supporting a minimal inference of discriminatory motivation, much less plead

14

facts to satisfy the heightened 'but for' causation standard under the ADA."  ECF No. 17 at 8.  The Court agrees on both points.

Because Plaintiff fails to plausibly allege that her disability was the but-for cause of the relevant adverse employment action, she fails to adequately plead her prima facie case of discrimination.  *See Eisenberg v. New York City Dep't of Educ.*, No. 24-cv-1661, 2025 WL 2022093, at *15 (E.D.N.Y. July 18, 2025) (granting defendant's motion to dismiss ADA discrimination claim where plaintiff failed "to allege that the adverse actions were imposed because of [p]laintiff's [disability]").

The parties do not dispute that Plaintiff experienced an adverse employment action *vis-à-vis* her suspension and demotion in August 2024.  *See* ECF No. 1 ¶¶ 46–49; ECF No. 17 at 18–20; ECF No. 19 at 13.  But Plaintiff alleges that "there are other adverse actions as well," namely:  "Defendant's failure to prevent her equipment from being taken."  ECF No. 19 at 13.  This argument is unavailing.

"[A] plaintiff establishes that they suffered an adverse action as long as they show 'some harm respecting an identifiable term or condition of employment.'"  *Harris v. City of New York Dep't of Health & Mental Hygiene*, No. 24-cv-4348, 2026 WL 710201, at *13 (E.D.N.Y. Mar. 13, 2026) (applying the definition for "adverse employment action" as set forth in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024) to ADA discrimination claims); *see also Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024) (same) (collecting cases).  Plaintiff fails to show such harm.  In fact, aside from Plaintiff's conclusory allegation, which the Court must disregard at this juncture, *see Twombly*, 550 U.S. at 555, she fails to demonstrate any harm to an identifiable term or condition of her employment caused by Defendant's failure to prevent her equipment from being taken,  *see Sosa v. N.Y.C.*

15

*Dep't of Educ.*, 368 F. Supp. 3d 489, 496 (E.D.N.Y. 2019) ("An employer's behavior does not constitute an adverse employment action because the employee sustained some generalized harm; the harm must be related to the employee's terms and conditions of employment.").

Accordingly, the Court concludes that Plaintiff sufficiently pleads only one adverse employment action:  her suspension and demotion in August 2024.  *See Slater*, 2025 WL 2208292, at *8 ("Because Plaintiff's allegations do not describe an adverse employment action— some harm with respect to a term or condition of employment—Plaintiff fails to state an ADA disability discrimination claim under an adverse employment theory.").

The fact that Plaintiff sufficiently pleads one element of her prima facie case does little to save her discrimination claim, however, because she does not allege facts sufficient to support that her suspension and demotion were the product of discrimination.  In fact, Plaintiff's own allegations—that she was suspended and demoted pending internal investigation into a physical altercation with a colleague—suggest a nondiscriminatory intent.  And, if nothing else, her allegations demonstrate that her disability was not the but-for cause of her suspension.  *See Krasner v. City of New York*, 580 F. App'x 1, 3 (2d Cir. 2014) ("[W]orkplace misconduct is a legitimate and nondiscriminatory reason for [an adverse employment action], even when such misconduct is related to a disability.") (citing *McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir.2012); *see also Russell v. Westchester Cmty. Coll.*, No. 23-7572, 2025 WL 1165846, at *2 (2d Cir. Apr. 22, 2025) ("[I]nappropriate behavior is indisputably a legitimate non-discriminatory reason for [an adverse employment action].").

Accordingly, Plaintiff has failed to plausibly state a claim for disability discrimination under the ADA and her claim is dismissed.

### B.    Failure to Accommodate Claims

With respect to Plaintiff's claim that Defendant failed to accommodate her disability, to survive a motion to dismiss, Plaintiff must allege that:

> (1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Dooley*, 636 F. App'x at18 (quoting *McMillan*, 711 F.3d at 125–26).

### i.    Plaintiff's Early Claims are Time-Barred

Defendant argues that some of Plaintiff's accommodation claims—those which stem from her July 2018 ergonomic equipment request and June 2021 work-from-home request—"should be dismissed because they are time-barred and Plaintiff failed to exhaust administrative remedies."  ECF No. 17 at 8, 13–14.

The Court already addressed Plaintiff's failure to accommodate claims under the NYSHRL and NYCHRL.  *See supra* Part I.  With respect to her accommodation claims under the ADA, "she must present the claims forming the basis of such a suit in a complaint to the EEOC."  *Rojas v. Hum. Res. Admin.*, No. 18-cv-6852, 2022 WL 3716851, at *6 (E.D.N.Y. Aug. 29, 2022), *aff'd*, 2023 WL 6380820 (2d Cir. Oct. 2, 2023).  Indeed, an ADA claim "is time barred if the plaintiff does not file a charge with the EEOC 'within 180 days of the alleged illegal discriminatory or retaliatory act or file[ ] a complaint with an appropriate state or local agency within 300 days of the occurrence of the alleged illegal act.'"  *Id.* (quoting *Cruz v. City of New York*, No. 21-cv-1999, 2021 WL 5605139, at *4 (S.D.N.Y. Nov. 30, 2021)); 42 U.S.C. § 12117(a).

Plaintiff concedes "that discrete acts of discrimination that occurred outside of 300 days from the filing of [her] EEOC charge, or before August 20, 2022, are not actionable or timely,

17

unless part of a continuing violation." ECF No. 19 at 7. However, she argues that "all events occurring on or after November 3, 2022, are timely under the NYSHRL and NYCHRL," and that events "that are outside of the [relevant] statute of limitation . . . are still either relevant background facts that relate to the timely allegations or are timely due to the fact that the hostile work environment to which Plaintiff was subjected continued on throughout her employment." *Id.* at 7, 9.

However, as to Plaintiff's failure to accommodate claims, the continuing violations doctrine does not apply. *See Konyukhova v. Walgreen Co.*, No. 24-cv-04390, 2026 WL 1024121, at *12 (S.D.N.Y. Feb. 3, 2026), *report and recommendation adopted*, 2026 WL 880381 (S.D.N.Y. Mar. 31, 2026) (Claims "of a failure to accommodate are quintessential discrete acts, for which the continuing violation doctrine does not apply."); *see Isbell v. City of New York*, 316 F. Supp. 3d 571, 586 (S.D.N.Y. 2018) ( "'Discrete acts . . . are easy to identify,' and are 'not actionable if time barred, even when they are related to acts alleged in timely filed charges.'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–15 (2002)). Accordingly, Plaintiff's ADA claims premised on the 2018 ergonomic equipment request and June 2021 work-from-home request are time-barred.

ii.       Plaintiff's Later Claims

In addition to the 2018 and 2021 accommodation requests, Plaintiff alleges that Defendant either explicitly or effectively refused to accommodate her disabilities between April 2023, and August 2025. *See* ECF No. 1 ¶¶ 37, 40, 52.

She first alleges Defendant failed to accommodate her when, in April 2023, one of her supervisors informed her that she could no longer use a private workspace, failed to provide her with alternative reasonable accommodations, and "returned her (along with her ergonomic equipment) to her original shared workstation . . . effectively stripping her of her

accommodation." *See* ECF No. 1 ¶¶ 24–25.  Defendant argues that this claim should be dismissed because a private workstation was not part of Plaintiff's reasonable accommodation, her return to the shared workstation included all her requested ergonomic equipment, and, therefore, Defendants never refused to make reasonable accommodations.  *See* ECF No. 17 at 24–25.

The Court agrees.  Not only does Plaintiff concede that the private workstation was not part of her reasonable accommodations, *see* ECF No. 1 ¶¶ 18, 20 (acknowledging that "by in or about late September, LIRR provided Anthony with *all* of [her] requested equipment") (emphasis added), she also acknowledges that when she was instructed to return to the shared workstation, Defendant "returned her (along with her ergonomic equipment) to her original shared workstation," *id.* ¶ 24.  In other words, Plaintiff alleges that she was refused reasonable accommodations, not because she did not receive the accommodations she requested, but because she did not receive the exact workspace she preferred.  However, "[t]he ADA 'does not require the employer to provide every accommodation a disabled employee may request,' nor does it 'obligate the employer to meet the personal preferences of disabled employees.'" *Slater*, 2025 WL 2208292, at *8 (quoting *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015)).  Indeed, "[b]ecause Defendant[] did attempt to, and did, accommodate Plaintiff, she fails to state a plausible failure to accommodate claim under the ADA." *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 524 (E.D.N.Y. 2019); *see also Slater*, 2025 WL 2208292, at *9 (dismissing plaintiff's failure to accommodate claim because "where, as here, the employer has changed [p]laintiff's workstation to alleviate her discomfort, as requested, [p]laintiff's claim cannot succeed on a failure to accommodate theory").

Next, she alleges that after one supervisor allowed her to work at the LIRR's Jamaica, New York Port Authority location, another supervisor told her "she was not supposed to be there" and that "on or about January 8, 2024," that second supervisor "told [her] that she was not allowed to use the office with the ergonomic equipment," effectively denying "her the reasonable accommodation that had been previously granted." *See* ECF No. 1 ¶ 37.  She also alleges that on several occasions in February 2024, Defendant "did not provide [her] with her ergonomic equipment" when she arrived for overtime work at the Stations Department office in Jamaica. *See id.* ¶ 40.  Finally, she alleges that since her return to work in August 2025, Defendant "still has not provided [her] with an ergonomic chair or her ergonomic equipment." *See id.* ¶ 52.

With respect to Plaintiff's allegations concerning the January 8, 2024, interaction with her supervisors, Defendant argues that Plaintiff fails to adequately state a claim because, "she was not permitted to work the January 2024 reassignment." *See* ECF No. 17 at 25.

In connection with the February 2024 overtime allegations, Defendant argues that the claim cannot prevail because Plaintiff "voluntarily" arranged to have her equipment moved to the office at Atlantic Terminal in Brooklyn in advance of her transfer, and, therefore, precludes any plausible allegation that Defendant refused to accommodate her.  *See id.* (referencing ECF No. 1 ¶ 38).

Finally, with respect to Plaintiff's allegation that she was not provided with her equipment upon her reinstatement in August 2025, Defendant argues that this is not a refusal to accommodate, but rather "typical bureaucratic delay." *Id.* at 22, 25.

Here, Defendants seem to misunderstand the procedural posture.[6]  Although its point concerning the February 2024 incidents is well-taken, Defendant's arguments concerning the January 8, 2024, and August 2025, incidents are unsubstantiated factual assertions that are inapposite in the context of a motion to dismiss, where only the plausible allegations contained in the Complaint—not the speculative factual assertions in the motion to dismiss—are assumed to be true.  *See Iqbal*, 556 U.S. at 678.  Because the Court must draw all reasonable inferences in Plaintiff's favor, the Court concludes that, at this juncture, Plaintiff has plausibly alleged that Defendant refused to make reasonable accommodations on January 8, 2024, and in or around August 2025, and, therefore, adequately pleads a prima facie case for failure to accommodate with respect to the claims arising out of those dates.

In light of the foregoing, Plaintiff's failure to accommodate claims premised on the January 8, 2024, and August 2025 allegations survive.  Accordingly, Defendant's motion to dismiss Plaintiff's ADA failure to accommodate claim is granted with respect to the April 2023 and February 2024 incidents only.

### C.      Hostile Work Environment Claims

Plaintiff brings hostile work environment claims under the ADA, NYSHRL, and NYCHRL.  *See* ECF No. 1 ¶¶ 54–57.  Because Plaintiff did not raise these claims with the NYSDHR, her state and local hostile work environment claims are not barred by the election of remedies doctrine.  The Court addresses Plaintiff's federal claims before turning to her state and local claims.

---

[6]      In her Opposition, Plaintiff argues that Defendant's "bureaucratic delays" argument "is a factual argument that is inappropriate on a motion for summary judgment," ECF No. 19 at 14, which suggests she is similarly confused about the procedural posture here.  However, given that the Opposition elsewhere demonstrates Plaintiff is aware she is opposing Defendant's motion to dismiss, *see, e.g.*, *id.* at 6–7, the Court understands this to be another editing error.

i.      Plaintiff Sufficiently Alleges a Hostile Work Environment Claim
        Under the ADA

To prevail on a hostile work environment claim under the ADA, Plaintiff must show:

"(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [her]

employment and create an abusive working environment, and (2) that a specific basis exists for

imputing the objectionable conduct to the employer." *Fox v. Costco Wholesale Corp.*, 918 F.3d

65, 74 (2d Cir. 2019).  Moreover, "the victim must subjectively perceive the conduct as abusive,"

and "the misconduct shown also must be severe or pervasive enough to create an objectively

hostile or abusive work environment." *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d

Cir. 2002), and *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

"There is no 'magic' threshold number of harassing incidents that are required, as a

matter of law, to demonstrate a hostile work environment." *Levitant v. City of New York Hum.*

*Res. Admin.*, 625 F. Supp. 2d 85, 97 (E.D.N.Y. 2008).  Therefore, courts evaluating such

allegations "look to the totality of the circumstances to determine whether a plaintiff has met this

burden, including proof of 'the frequency of the discriminatory conduct; its severity; whether it

[was] physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interfere[d] with [the plaintiff's] work performance.'" *Fox*, 918 F.3d at 74 (quoting

*Harris*, 510 U.S. at 23).

With respect to whether a specific basis exists for imputing the objectionable conduct to

the employer, where, as here, the allegations concern conduct "perpetrated by the plaintiff's

coworkers, an employer will be liable if the plaintiff demonstrates that the employer either

provided no reasonable avenue for complaint or knew of the harassment but did nothing about

it." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir.2011).

22

Plaintiff's hostile work environment claims are predicated on allegations that: (1) almost simultaneously with Defendant moving her to a private workstation, *i.e.*, in or around September 2021, "her ergonomic chair (which was labeled with her name) would be taken by coworkers and not be at her designated work location," *see* ECF No. 1 ¶¶ 18–23; (2) Defendant "removed [her] from her ergonomic workspace [*i.e.*, the "private workstation"] and returned her to her original station," *see id.* ¶¶ 24–25; (3) Defendant refused to intervene to prevent her equipment from being relocated, *see, e.g.*, *id.* ¶ 22, 27, 31; (4) Defendant provided conflicting information about her working at another office, *see id.* ¶ 37; (5) her colleagues continued to move her equipment, *see id.* ¶¶ 43–45; (6) Defendant "improperly suspended" her, *see id.* ¶ 47; and (7) Defendant "falsely alleged that [she was] guilty of violating [LIRR's] workplace violence policy, and demoted her, despite Anthony being the victim of the assault," *id.* ¶ 49. Defendant argues Plaintiff's hostile work environment allegations should be dismissed because the conduct at issue is neither severe nor pervasive. *See* ECF No. 17 at 8. Specifically, Defendant argues Plaintiff's claims do not amount to a hostile work environment because "over the course of a four-year period, [Plaintiff's] work equipment went missing less than a dozen times and her managers ignored an unspecified number of purported complaints about losing her private desk and the missing equipment." *Id.* at 27.

The Court understands that Plaintiff subjectively perceived these actions as hostile, so its analysis first turns on whether the conduct is sufficiently severe *or* pervasive. *See Fox*, 918 F.3d at 74. The Court concludes that the conduct complained of is not objectively severe enough to plausibly allege a claim for hostile work environment. "Hostile work environment claims . . . are not intended to promote or enforce civility, gentility or even decency." *Blumstein-Torrella v. N.Y.C. Dep't of Educ.*, No. 19-cv-3492, 2024 WL 4973393, at *15 (S.D.N.Y. Sept. 7, 2024),

23

*report and recommendation adopted*, 2024 WL 4835669 (S.D.N.Y. Nov. 20, 2024).  Indeed, even "[e]xcessive . . . rudeness do[es] not constitute a hostile work environment."  *See id.*; *see also Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment.") (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004)); *Fox*, 918 F.3d at 76 (2d Cir. 2019) ("[T]easing in the workplace is not uncommon, and in most instances probably not actionable.").

However, Plaintiff does allege conduct pervasive enough to sustain a hostile work environment claim.  Indeed, the alleged conduct at issue began at or around September 2021 and occurred on a near-regular basis until the summer of 2024 when she was suspended.  *See* ECF No. 1 ¶¶ 20–45.  In other words, the record reflects that Plaintiff's ergonomic equipment was constantly relocated, if not outright missing, almost as soon as it was provided and this pattern of behavior continued intermittently until she was no longer physically in the office.  *See id.*; *see also King v. Aramark Servs. Inc.*, 96 F.4th 546, 561 (2d Cir. 2024) (acknowledging that "an employer can create a hostile environment through a series of discriminatory occurrences that transpire over days and years").  In consideration of the totality of the circumstances, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that she plausibly alleges conduct that is "more than episodic," and "sufficiently continuous and concerted," such that it is pervasive enough to meet the threshold.  *See Fox*, 918 F.3d at 74; *Alfano*, 294 F.3d at 374.

As to the second element—whether a specific basis exists for imputing the objectionable conduct to the employer—Plaintiff plausibly alleges such a basis exists because she demonstrates that she complained to her supervisors such that, at the very least, they "knew of the harassment

24

but did nothing about it." *See Rojas*, 660 F.3d at 107. Not only does Plaintiff allege that she regularly complained about her missing or relocated equipment to various supervisors and they did nothing to prevent further tampering, *see* ECF No. 1 ¶¶ 22, 27, 34, 36, 42, 45, Defendant concedes as much. In fact, Defendant asserts that Plaintiff's "managers ignored an unspecified number of purported complaints." ECF No. 17 at 27. The fecklessness of Plaintiff's supervisors in the face of her complaints suggest that, in practice, Defendant "provided no reasonable avenue for complaint," but regardless, Plaintiff plausibly alleges that Defendant "knew of the harassment but did nothing about it." *Rojas*, 660 F.3d at 107.

Accordingly, because she has plausibly alleged pervasive conduct and a specific basis for imputing that conduct to Defendant, Plaintiff's hostile work environment claim under the ADA survives.

ii.    <u>Plaintiff Sufficiently Alleges Hostile Work Environment Claims Under the NYSHRL and NYCHRL</u>

Because "courts apply the same standard when assessing hostile work environment claims arising under Title VII, the [NYSHRL], and the ADA," the Court need not repeat its analysis here; the result of Plaintiff's NYSHRL hostile work environment claim is the same as her claim under the ADA. *See Anderson v. City of New York*, 712 F. Supp. 3d 412, 434–35 (S.D.N.Y. 2024); *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 373 (S.D.N.Y. 2018) (analyzing hostile work environment claims under the NYSHRL and the ADA using the same standard).

The standard under the NYCHRL is more lenient, and "omit[s] the requirement that the complained-of conduct be severe or pervasive." *Moazzaz v. MetLife, Inc.*, No. 19-cv-10531, 2021 WL 827648, at *8 (S.D.N.Y. Mar. 4, 2021). Under the NYCHRL, a plaintiff "need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent."

25

*Id.* (quoting *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). In this context, "[a] NYCHRL claim fails on the pleadings only when it raises a 'truly insubstantial case in which [the] defendant's behavior cannot be said to fall within the broad range of conduct that falls between severe and pervasive on the one hand and a petty slight or trivial inconvenience on the other.'" *Id.* (quoting *Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 58–59 (1st Dep't 2012)).

Because Plaintiff has sufficiently alleged a hostile work environment claim under the stricter ADA and NYSHRL standards, it follows, *a fortiori*, that she sufficiently alleges a claim under the NYCHRL's less stringent standard. Therefore, Plaintiff's hostile work environment claims under the NYSHRL and NYCHRL survive.

### D. Retaliation Claim

In order to establish a prima facie case of retaliation under the ADA, a plaintiff must show: "(1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). "To plead causation, a plaintiff must allege 'that his [or her] protected activity was the but-for cause of the adverse employment action.'" *Anderson*, 712 F. Supp. 3d at 433 (quoting *Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020)). And, in this context, "[t]emporal proximity between the adverse action and the protected activity is sufficient to establish a causal connection." *Id.* (citing *Natofsky*, 921 F.3d at 353).

Defendant argues that "the Complaint fails to show a causal connection between the protected activity and adverse action – let alone meet the heightened 'but for' standard." ECF No. 17 at 29. The Court agrees. And, because it already discussed why Plaintiff failed to

26

establish but-for causation in connection with her discrimination claim, *see supra* Part II.A, it need not repeat that analysis here.  For similar reasons, the Court concludes that Plaintiff does not plausibly allege that her protected activity was the but-for cause of an adverse employment action.  *See Anderson*, 712 F. Supp. 3d at 433.  Accordingly, she fails to state an ADA retaliation claim.

### III.    Leave to Amend

Although Plaintiff does not request leave to amend, *see* Jan. 28, 2026, Text Order, for the avoidance of doubt, Plaintiff is denied such leave.  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request that was not made.").  In any event, the Court would decline to grant leave because, having reviewed the Complaint, the Opposition, and the papers incorporated by reference in those submissions, the Court finds that further amendment would not change the result.  *See id.* (finding district court did not err in dismissing claim with prejudice in the absence of any indication that plaintiff could or would amend such that amendment would lead to a different result); *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (Where "plaintiff is unable to demonstrate that [she] would be able to amend [her] complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

## **CONCLUSION**

For these reasons, Defendant's motion to dismiss Plaintiff's NYSHRL and NYCHRL claims for failure to accommodate, discrimination, and retaliation, pursuant to Rule 12(b)(1), is GRANTED.  Defendant's motion to dismiss Plaintiff's ADA, NYSHRL, and NYCHRL claims for discrimination, failure to accommodate, hostile work environment, and retaliation, pursuant to Rule 12(b)(6), is GRANTED IN PART.  In sum:

- Defendant's motion is granted as to Plaintiff's ADA discrimination claims because Plaintiff fails to plausibly allege that her suspension and demotion were the product of discrimination;

- Defendant's motion is granted as to Plaintiff's ADA failure to accommodate claims with respect to the claims concerning the 2018 and the June 2021 requests, which are time-barred; granted as to the claims premised on the April 2023 and the February 2024 incidents because Plaintiff fails to plausibly allege that Defendant refused to accommodate her disability; and denied as to the claims premised on the January 8, 2024 and the August 2025 incidents only because Plaintiff sufficiently alleges Defendant's refusal to accommodate her in those instances;

- Defendant's motion is denied as to Plaintiff's hostile work environment claims under the ADA, NYSHRL, and NYCHRL, because Plaintiff alleges sufficiently pervasive conduct and a specific basis for imputing that conduct to Defendant; and

- Defendant's motion is granted as to Plaintiff's ADA retaliation claims because Plaintiff does not plausibly allege that her protected activity was the but-for cause of her suspension and demotion.

Further, in light of the limited nature of the claims that remain as a result of this Order, the Court refers this case to the District's Court-Annexed Mediation Program.  The parties shall select a mediator by August 24, 2026, and complete their mediation by September 21, 2026.[7]

---

[7]    The Court reminds the parties that once it "determine[s] that a case is appropriate for mediation," it may "order that case to mediation, with or without the consent of the parties."  *See* Local Civil Rule 83.9(e)(3).  For the reasons set forth above, the Court concludes that this case is appropriate for mediation, and it will not entertain requests to avoid those provisions of this Order.  In the event any party is unable or unwilling to pay the mediator's fee, that party may apply for a fee waiver, pursuant to Local Rule 83.8(e)(3).  Any party requesting such waiver shall provide information and supporting documentation to show the financial hardship associated with paying for mediation services by August 7, 2026.

The parties shall file a letter with the Court on or before August 25, 2026, confirming that they have selected a mediator and shall file another letter with the Court on or before September 22, 2026, confirming that they have completed mediation.  If the mediation is unsuccessful, the Court will likely refer the case to Judge Eichenholtz for a settlement conference and, thereafter, lift the discovery stay if necessary.


SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge


Dated: Brooklyn, New York
       July 23, 2026

29